UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHICAGO CAPITAL MANAGEMENT, LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SERVBANC HOLDCO, INC. as successor in interest to IF BANCORP, INC., SERVBANK, NATIONAL ASSOCIATION, WALTER H. HASSELBRING, III, PAMELA J. VERKLER, ALAN D. MARTIN, JOSEPH A. COWAN, WAYNE A. LEHMANN, RICHARD S. STENZINGER, DENNIS C. WITTENBORN, RODNEY E. YERGLER, and SCOTT J. DWORSCHAK,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Chicago Capital Management, LLC ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding IF Bancorp, Inc. ("IF Bancorp" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the

1

Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.  This action is brought by Plaintiff against IF Bancorp and the members of the Company's board of directors (the "Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a) and § 78t(a), and SEC Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9(a) ("Rule 14a-9"). Plaintiff's claims arise in connection with the Board's solicitation of IF Bancorp shareholders to vote in favor of a merger transaction (the "Merger")—based on false representations of the consideration shareholders would receive—pursuant to which IF Bancorp would merge with and into ServBanc Holdco, Inc. ("ServBanc Holdco").

2.  Prior to the Merger, IF Bancorp was the holding company for Iroquois Federal Savings and Loan Association ("Iroquois Federal"), a federally chartered savings association headquartered in Watseka, Illinois. Iroquois Federal's business consisted primarily of taking deposits from the general public and investing those deposits, together with funds generated from operations and borrowings, into a variety of loans and lines of credit.

3.  On November 25, 2024, IF Bancorp shareholders voted to approve a shareholder proposal calling for the prompt sale of the Company.

4.  On October 30, 2025, IF Bancorp filed a Current Report on Form 8-K announcing that one day earlier, it had entered into a merger agreement (the "Merger Agreement") pursuant to which, following a series of transactions, the Company would merge with and into ServBanc Holdco.

5. On December 30, 2025, to solicit IF Bancorp shareholders to vote in favor of the Merger, the Board authorized the filing of a false and misleading definitive proxy on Schedule 14A ("Proxy") with the SEC.

6. Among other representations, the Proxy stated that pursuant to the Merger Agreement, each IF Bancorp shareholder would purportedly receive approximately $27.20 per share (the "Merger Consideration"), subject to an adjustment based on IF Bancorp's tangible common equity at the time of closing (the "Equity Based Adjustment").

7. The approximate per-share consideration of $27.20, preceding the Equity Based Adjustment, represented a premium of just $1.90, or 6.98%, on the $25.30 closing price of IF Bancorp stock on October 29, 2025, the last trading day before Defendants announced the Merger.

8. The Proxy further stated that pursuant to the Equity Based Adjustment, the Merger Consideration would be reduced if, at the time of closing, IF Bancorp's tangible common equity was less than $77.8 million (the "Merger Consideration Threshold"), and that the Merger Consideration would be reduced by the difference between the Merger Consideration Threshold and IF Bancorp's tangible common equity. Tangible common equity would equal IF Bancorp's "good faith estimate of all income and expenses through the closing of the Merger and (B) unrealized losses in the consolidated securities portfolio," less transaction costs that had not been paid or accrued before the date on which tangible common equity would be calculated, and plus costs or expenses related to claims, demands, or actions regarding the Merger.

9. The Proxy further stated that if instead, IF Bancorp's tangible common equity at the time of closing was greater than the Merger Consideration Threshold, then each shareholder would purportedly receive a cash dividend equal to the amount by which the Company's equity

exceeded the Merger Consideration Threshold, divided by the total number of outstanding shares of the Company's stock (the "Special Dividend").

10. However, the purported Merger Consideration and Special Dividend were illusory and misled IF Bancorp shareholders into voting for the merger. There was no meaningful likelihood that IF Bancorp's tangible common equity would exceed the Merger Consideration Threshold, and as a result, IF Bancorp shareholders were nearly certain to receive less than $27.20 per share and would not receive the Special Dividend at all. Specifically, Iroquois Federal held a loan participation interest in the amount of $13,996,617 (the "Loan") that it was required to renew before the Merger closed, and it would need ServBanc Holdco to allow it to do so. Following renewal of the Loan, IF Bancorp's tangible common equity would fall below the Merger Consideration Threshold because ServBand Holdco would require it to establish a reserve against the Loan.

11. The Proxy was negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation. Specifically, the Proxy made false and/or misleading statements and/or failed to disclose that: (i) due to IF Bancorp's required Loan renewal, there was no meaningful likelihood that the Company's tangible common equity would exceed the Merger Consideration Threshold; (ii) accordingly, the Proxy's statements concerning the Merger Consideration and Special Dividend were misleading insofar as they overstated the likelihood that IF Bancorp shareholders would receive the Special Dividend; and (iii) as a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

12. On February 4, 2026, IF Bancorp filed a Current Report on Form 8-K announcing that the Company's shareholders voted to approve the Merger one day earlier. The Company further stated that it expected the Merger to close on March 12, 2026.

13. On March 10, 2026, just over one month after IF Bancorp shareholders voted to approve the Merger and two days before it closed, IF Bancorp filed a Current Report on Form 8-K announcing it had entered into an agreement with ServBanc Holdco in connection with its request to renew Iroquis Federal's Loan. Pursuant to this agreement, ServBanc Holdco agreed to allow Iroquois Federal to renew the Loan, if it also established a $7 million cash reserve against the Loan.

14. IF Bancorp further stated that ServBanc Holdco agreed to create a contingent payment fund of $5,004,650 (the "Contingent Payment Fund"), "reflecting the tax-effected impact of the reserve on the Company's tangible common equity". The Contingent Payment Fund would be disbursed among IF Bancorp shareholders "only if the Loan is repaid", and "[a]ccordingly, there is no guarantee as to the amount of the Contingent Payment Fund, if any, that may be paid to Company stockholders". Moreover, the Company further stated that, if the Contingent Payment Fund was disbursed in its entirety, each Company shareholder would receive approximately $1.51 per share. If it were not distributed to Company shareholders, the Contingent Payment Fund would revert to ServBanc Holdco.

15. Finally, IF Bancorp stated that it had reached a preliminary agreement with ServBanc Holdco as to the tangible common equity calculation and "as a result, the cash merger consideration is expected to be $26.40 per share", excluding any payments from the Contingent Payment Fund.

16.     As a result of Defendants' wrongful acts and omissions, Plaintiff and other Class members were deprived of their right to be presented with accurate proxy materials while asked to vote on the Merger, were caused to vote in favor of the Merger, were caused to not exercise their appraisal rights, and were caused to sell their shares for less than the fair value of those shares.

17.     By reason of the misconduct detailed herein, the Defendants are liable pursuant to Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

## JURISDICTION AND VENUE

18.     The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. § 78n(a) and § 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9(a)).

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

20.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  Plaintiff is a resident of this District, and a substantial part of the property that is the subject of this action is thus situated in this District.

21.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

22.     Plaintiff, as set forth in the attached Certification, held IF Bancorp Class A common stock entitled to vote on the Merger, was deprived of its right to be presented with accurate proxy materials while asked to vote on the Merger, was caused to vote in favor of the Merger, was caused

6

to not exercise its appraisal rights, and was caused to sell its shares for less than the fair value of those shares.

23.     ServBanc Holdco is an Arizona corporation with principal executive offices located at 3138 East Elwood Street, Phoenix, Arizona 85034. Pursuant to the Merger, IF Bancorp merged with and into ServBanc Holdco, with ServBanc Holdco as the surviving entity.

24.     Servbank, National Association ("Servbank, N.A.") is a national banking association with principal executive offices located at 3201 Orchard Road, Oswego, Illinois 60543. Pursuant to the Merger, Iroquois Federal merged with and into Servbank, N.A., with Servbank, N.A. as the surviving entity.

25.     Defendant IF Bancorp was a Maryland corporation with principal executive offices located at 201 East Cherry Street, Watseka, Illinois 60970. Prior to the Merger, IF Bancorp's Class A common stock traded in an efficient market on The Nasdaq Stock Market, LLC ("NASDAQ") under the ticker symbol "IROQ".

26.     Defendant Walter H. Hasselbring, III ("Hasselbring") served as IF Bancorp's Chief Executive Officer at all relevant times. Defendant Hasselbring also served as a director of IF Bancorp before the Merger, and became a Director of Servbank, N.A. following the Merger.

27.     Defendant Pamela J. Verkler ("Verkler") served IF Bancorp's Chief Financial Officer at all relevant times. Defendant Verkler also served as a director of IF Bancorp at all relevant times.

28.     Defendant Alan D. Martin ("Martin") served as a director of IF Bancorp at all relevant times.

29.     Defendant Joseph A. Cowan ("Cowan") served as a director of IF Bancorp at all relevant times.

30. Defendant Wayne A. Lehmann ("Lehmann") served as a director of IF Bancorp at all relevant times.

31. Defendant Richard S. Stenzinger ("Stenzinger") served as a director of IF Bancorp at all relevant times.

32. Defendant Dennis C. Wittenborn ("Wittenborn") served as a director of IF Bancorp at all relevant times.

33. Defendant Rodney E. Yergler ("Yergler") served as a director of IF Bancorp at all relevant times.

34. Defendant Scott J. Dworschak ("Dworschak") served as a director of IF Bancorp from September 2, 2026 until the Merger closed.

35. Defendants Hasselbring, Verkler, Martin, Cowan, Lehmann, Stenzinger, Wittenborn, Yergler and Dworschak are sometimes referred to herein as the "Individual Defendants."

36. The Individual Defendants possessed the power and authority to control the contents of IF Bancorp's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of IF Bancorp's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with IF Bancorp, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

37.     IF Bancorp, ServBanc Holdco, Servbank, N.A., and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

38.     Prior to the Merger, IF Bancorp was the holding company for Iroquois Federal, a federally chartered savings association headquartered in Watseka, Illinois. Iroquois Federal's business consisted primarily of taking deposits from the general public and investing those deposits, together with funds generated from operations and borrowings, into a variety of loans and lines of credit.

39.     On November 25, 2024, IF Bancorp shareholders voted to approve a shareholder proposal calling for the prompt sale of the Company.

40.     On October 30, 2025, IF Bancorp filed a Current Report on Form 8-K announcing that one day earlier, it had entered into the Merger Agreement, pursuant to which, following a series of transactions, the Company would merge with and into ServBanc Holdco.

### Materially False and Misleading Statements Issued in the Proxy

41.     On December 30, 2025, to solicit IF Bancorp shareholders to vote in favor of the Merger, the Board authorized the filing of the false and misleading definitive Proxy with the SEC.

42.     The Proxy included a summary of the consideration IF Bancorp shareholders would purportedly receive pursuant to the Merger, stating *inter alia*:

> As a Company shareholder, upon the closing of the Merger, each of your shares of our common stock will automatically be converted into the right to receive an amount equal to the quotient of (A) $89.8 million (the "Total Cash Consideration"), divided by (B) the number of shares of Company Stock outstanding immediately prior to the Effective Time, rounded down to the nearest cent and adjusted based on the Company's tangible common equity at closing. This will result in approximately $27.20 per share of the merger consideration (the "Merger

Consideration"), subject to the aforementioned tangible common equity based adjustment.

43.     The Proxy repeated this misleading representation of the Merger Consideration in a "Question and Answer" section that followed the summary of the Merger, stating *inter alia*:[1]

**What will I receive in the Merger?**

As a Company shareholder, upon the closing of the Merger, each of your shares of our common stock will automatically be converted into the right to receive an amount in cash equal to approximately $27.20 per share, subject to adjustment based on the Company's tangible common equity at closing.

44.     The approximate per share consideration of $27.20, preceding the Equity Based Adjustment, represented a premium of just $1.90, or 6.98%, on the $25.30 closing price of IF Bancorp stock on October 29, 2025, the last trading day before Defendants announced the Merger.

45.     The Proxy repeated this characterization of the Merger Consideration again when discussing the Merger approval proposal that would be subject to a shareholder vote.  Along with this misleading characterization of the Merger Consideration, the Proxy provided a definition of the Equity Based Adjustment and represented that shareholders could possibly receive more than $27.20 per share by virtue of the Special Dividend, stating *inter alia*:

As soon as possible after the conditions to consummation of the merger described herein have been satisfied or waived, and unless the Merger Agreement has been terminated as discussed herein, the Merger Sub will merge with and into the Company, with the Company as the surviving corporation, and, at the closing, each of the outstanding shares of the Company common stock will be converted into the right to receive $27.20 in cash, subject to adjustment based on the Company's tangible common equity at closing.

If the Company's tangible common equity is less than $77.8 million (the "Minimum Equity"), then the Total Cash Consideration will be reduced, on a dollar-for-dollar basis, by an amount equal to the difference between the [Merger Consideration Threshold] and the Company's tangible common equity. If the Company's tangible common equity exceeds the Minimum Equity, the Company will pay a cash dividend (the "Special Dividend") for each outstanding share of Company Stock

---

[1] All emphases original unless stated otherwise.

equal to the quotient of (a) the amount that the tangible common equity exceeds the Minimum Equity at closing, divided by (b) the total number of shares of Company stock outstanding as of the record date of such dividend.

46. The Proxy continued to specify that, pursuant to the Merger Agreement, "tangible common equity" included IF Bancorp's "good faith estimate of all income and expenses through the closing of the Merger and (B) unrealized losses in the consolidated securities portfolio," less transaction costs that had not been paid or accrued before the date on which tangible common equity would be calculated, and plus costs or expenses related to claims, demands, or actions regarding the Merger.

47. Following its discussion of the Equity Based Adjustment, the Proxy stated then-current totals of IF Bancorp's assets, loans, deposits, and shareholders' equity. In relevant part, the Proxy omitted to state that, in less than three months, Iroquois Federal would be required to renew the Loan. The Proxy further omitted that due to this renewal, IF Bancorp's tangible common equity would fall below the Merger Consideration Thresholder and as a result, shareholders would not receive the $27.20 that the Proxy repeatedly represented they would, as alleged *supra* ¶¶ 6, 42–45.

48. The Proxy also repeatedly stated that the Board "believes the Merger is fair and in our shareholders' best interests". First, the summary of the Merger stated:

> **The Company's Board of Directors Recommends That Shareholders Approve the Merger**
>
> Our board of directors believes that the Merger is fair and in our shareholders' best interests, and unanimously recommends that you vote **"FOR"** the proposal to approve the Merger Agreement and the Merger. For a discussion of the circumstances surrounding the Merger and the factors considered by our board of directors in approving the Merger Agreement, see "*Proposal 1— Approval of the Merger Agreement —The Merger — The Company's Reasons for the Merger*."

49.     Then, the Question and Answer section of the Proxy repeated the Board's purported opinion that the Merger was in shareholders' "best interests", stating *inter alia*:

**What am I being asked to vote on and how does the board of directors recommend that I vote?**

You are being asked to vote **"FOR"** the approval of the Merger Agreement and the Merger, **"FOR"** the approval of a non-binding advisory proposal regarding the compensation to be paid to the named executive officers of the Company in connection with the transactions contemplated by the Merger Agreement (the "Merger-Related Compensation") and **"FOR"** a proposal to approve the adjournment or postponement of the special meeting, if necessary or appropriate, to solicit additional proxies in favor of the Merger Agreement and the Merger (the "Adjournment Proposal"). The Company's board of directors has determined that the proposed Merger is in the best interests of the shareholders of the Company, has approved the Merger Agreement and unanimously recommends that shareholders vote **"FOR"** the approval of the Merger Agreement and the Merger, **"FOR"** the Merger-Related Compensation proposal and **"FOR"** the Adjournment Proposal.

50.     In the shareholder proposal concerning approval of the Merger, the Proxy included a section entitled "The Company's Reasons for the Merger". Here, the Proxy stated that the Board purportedly "unanimously determined that the merger is in the best interests of the Company's shareholders", and listed the opinion of Keefe, Bruyette & Woods ("KBW") as to the fairness of the Merger Consideration (the "Fairness Opinion") among several factors on which the Board based this purported determination, stating *inter alia*:

The Company's board of directors evaluated the Merger in connection with management and the Company's financial and legal advisors in unanimously determining that the proposed merger is in the best interests of the Company's shareholders. The Company's board of directors considered a number of factors affecting the business, operations, financial condition, earnings and future prospects of the Company. The material factors considered by the board of directors included: . . . The financial presentation of KBW to the Company's board of directors and the opinion, dated October 29, 2025, of KBW to the Company's board of directors as to the fairness, from a financial point of view, to the holders of Company common stock, collectively as a group, of the Total Cash Consideration of $89.8 million to be received by such shareholders in the proposed Merger, as more fully described below under "—Opinion of the Company's Financial Advisor." . . .

12

The board of directors evaluated the factors described above and reached a unanimous determination that the Merger was in the best interests of the Company and its shareholders. In reaching its determination to approve and recommend the Merger, the Company's board of directors looked at the totality of the information presented to it and did not assign any relative or specific weights to any of the individual factors considered, and individual directors may have given different weights to different factors.

**The Company's board of directors unanimously recommends that the Company's shareholders vote "FOR" the adoption of the Merger Agreement and the Merger, "FOR" the Merger-Related Compensation proposal; and "FOR" the Adjournment Proposal.**

51. In the Fairness Opinion, KBW explicitly disclaimed any opinion as to fairness of the Equity Based Adjustment, stating *inter alia*:

You have requested the opinion of Keefe, Bruyette & Woods, Inc. ("KBW" or "we") as investment bankers as to the fairness, from a financial point of view, to the common shareholders of IF Bancorp, Inc. ("IF"), collectively as a group, of the Aggregate Consideration (as defined below) to be received by such shareholders in the proposed merger of a to-be-formed wholly-owned subsidiary ("Merger Sub") of ServBanc Holdco, Inc. ("Servbank") with and into IF (the "Transaction"), pursuant to the Agreement and Plan of Merger to be entered into by and between Servbank, Merger Sub and IF (the "Agreement"). Pursuant to the Agreement and subject to the terms, conditions and limitations set forth therein, at the Effective Time (as defined in the Agreement), by virtue of the Transaction, and without any further action by Servbank, Merger Sub, IF or any holder of record of securities of Servbank, Merger Sub or IF, each share of common stock, par value $0.01 per share, of IF ("IF Common Stock") that is issued and outstanding immediately prior to the Effective Time, except for the Cancelled Shares (as defined in the Agreement), shall be converted into the right to receive cash in an amount equal to the quotient of (i) ***$89,800,000 (the "Aggregate Consideration"), subject to adjustment as provided in the Agreement (as to which adjustment we express no opinion)***, divided by (ii) the number of shares of IF Common Stock outstanding immediately prior to the Effective Time. The terms and conditions of the Transaction are more fully set forth in the Agreement.

52. Subject to this explicit disclaimer, among several others, KBW stated "it is our opinion that, as of the date hereof, the Aggregate Consideration to be received by the holders of IF Common Stock in the Transaction is fair, from a financial point of view, to such holders, collectively as a group."

53. The Proxy acknowledged that "[c]ertain of [IF Bancorp's] directors and officers have interests in the Merger that are different from, or are in addition to, their interests as shareholders in the Company", by virtue of "payments made by the Company to certain executive officers pursuant to their change in control agreement, which will result in lump sum cash payments being made to such executive officers".

54. Specifically, Defendant Hasselbring stood to receive $2,352,639 if there was a change of control of IF Bancorp, such as via the Merger. Similarly, Defendant Verkler stood to receive $1,056,374, and Defendant Chamberlain stood to receive $989,090. These lump sum payments would have provided each of these Defendants with incentive to justify the Merger Consideration and the Equity Based Adjustment, and to recommend that IF Bancorp shareholders approve the Merger.

55. The statements referenced in ¶¶ 41–43, 45–52 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, the Proxy made false and/or misleading statements and/or failed to disclose that: (i) due to IF Bancorp's required Loan renewal, there was no meaningful likelihood that the Company's tangible common equity would exceed the Merger Consideration Threshold; (ii) accordingly, the Proxy's statements concerning the Merger Consideration and Special Dividend were misleading insofar as they overstated the likelihood that IF Bancorp shareholders would receive the Special Dividend; and (iii) as a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

14

56. On February 4, 2026, IF Bancorp filed a Current Report on Form 8-K announcing that the Company's shareholders voted to approve the Merger one day earlier. The Company further stated that it expected the Merger to close on March 12, 2026.

57. On March 10, 2026, just over one month after IF Bancorp shareholders voted to approve the Merger and two days before it closed, IF Bancorp filed a Current Report on Form 8-K announcing it had entered into an agreement with ServBanc Holdco in connection with its request to renew Iroquis Federal's Loan. Pursuant to this agreement, ServBanc Holdco agreed to allow Iroquois Federal to renew the Loan, if it also established a $7 million cash reserve against the Loan.

58. IF Bancorp further stated that ServBanc Holdco agreed to create the Contingent Payment Fund of $5,004,650, "reflecting the tax-effected impact of the reserve on the Company's tangible common equity". The Contingent Payment Fund would be disbursed among IF Bancorp shareholders "only if the Loan is repaid", and "[a]ccordingly, there is no guarantee as to the amount of the Contingent Payment Fund, if any, that may be paid to Company stockholders". Moreover, the Company further stated that, if the Contingent Payment Fund was disbursed in its entirety, each Company shareholder would receive approximately $1.51 per share. If it were not distributed to Company shareholders, the Contingent Payment Fund would revert to ServBanc Holdco.

59. Finally, IF Bancorp stated that it had reached a preliminary agreement with ServBanc Holdco as to the tangible common equity calculation and "as a result, the cash merger consideration is expected to be $26.40 per share", excluding any payments from the Contingent Payment Fund.

60. On March 12, 2026, the Merger closed. As a result, Defendants Hasselbring, Verkler, and Chamberlain each collected change in control payments. Defendant Hasselbring

received $2,352,639, Defendant Verkler received $1,056,374, and Defendant Chamberlain received $989,090.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class (the "Class") consisting of all holders of IF Bancorp Class A common stock entitled to vote on the Merger.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

62.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, the Proxy discloses that, as of the close of business on December 18, 2025, there were 3,351,526 shares of IF Bancorp Class A common stock outstanding and eligible to vote on the Merger.  All members of the Class may be identified from records maintained by ServBanc Holdco, IF Bancorp, or its transfer agent, and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

63.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

64.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

16

65.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether Defendants, through their acts as alleged herein, have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

- whether Defendants, through their acts as alleged herein, have violated Section 20(a) of the Exchange Act;

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

66.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## **COUNT I**

**(Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against All Defendants)**

67.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

68.     SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17

69. Defendants prepared and disseminated the false and misleading Proxy, specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. By virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts from the Proxy necessary to make statements made therein—in light of the circumstances under which they were made—not misleading.

71. Yet, as specified in paragraphs 41–55 above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants (i) made untrue statements of material fact in the Proxy, and (ii) omitted material facts from the Proxy necessary to make statements therein— in light of the circumstances under which they were made—not misleading, in order to induce IF Bancorp shareholders to vote in favor of the Merger and related proposals. Defendants were at least negligent in filing the Proxy with these material misrepresentations and omissions.

72. The material misrepresentations and omissions in the Proxy specified above are material insofar as there is a substantial likelihood that a reasonable IF Bancorp stockholder would consider them important in deciding whether to vote in favor of the Merger and related proposals. In addition, a reasonable IF Bancorp stockholder would view disclosures of the omitted facts specified above as significantly altering the "total mix" of information made available to IF Bancorp shareholders.

73. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9(a) promulgated thereunder.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

74.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.     The Individual Defendants acted as controlling persons of IF Bancorp within the meaning of Section 20(a) of the Exchange Act, as alleged herein.  By virtue of their positions as officers and/or directors of IF Bancorp, and participation in, and/or awareness of IF Bancorp's operations, and/or intimate knowledge of the contents of the Proxy filed with the SEC, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of IF Bancorp with respect to the Proxy, including the content and dissemination of the various statements in the Proxy that Plaintiff contends are materially false and misleading, and the omission of material facts specified above.

76.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of IF Bancorp, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised same.  In particular, the Proxy at issue references the unanimous recommendation of the Board to approve the Merger, and recommend that IF Bancorp shareholders vote for the Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

78. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered in connection with such negotiation, review and approval. The Individual Defendants thus directly participated in the drafting of the Proxy.

79. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

80. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff were damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 28, 2026

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

**DJS LAW GROUP LLP**
David J. Schwartz
(*pro hac vice* application forthcoming)
274 White Plains Road, Suite 1
Eastchester, New York 10709
Telephone: (914) 206-9742
david@djslawllp.com

*Attorneys for Plaintiff Chicago Capital Management, LLC*

21